[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12119

_____

D.C. Docket No. 8:13-cv-01854-CEH-TBM

DELORES FRAZIER-WHITE,

Plaintiff-Appellant,

versus

DAVID GEE, in his official capacity as Sheriff
of Hillsborough County, Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 7, 2016)

Before HULL, JULIE CARNES, and CLEVENGER,[*] Circuit Judges.

_____

[*] Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal
Circuit, sitting by designation.

JULIE CARNES, Circuit Judge:

Plaintiff appeals the district court's order granting summary judgment to Defendant on her disability discrimination and retaliation claims arising under the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA").  After a careful review of the record, and with the benefit of oral argument, we affirm.

## BACKGROUND

### I.    Factual Background

This case arises from the termination of Plaintiff's employment from the Hillsborough County Sheriff's Office ("HCSO") in June 2011.  Plaintiff was hired by the HCSO in 1990, and she held various positions there until her termination. During her last few years at the HCSO, Plaintiff was a community service officer ("CSO").  As a CSO, Plaintiff was responsible for security-related duties at the sheriff's detention center, including checking in and screening visitors, issuing badges, completing paperwork and logs, answering and routing telephone calls, and locking and unlocking secure doors within the center.

Plaintiff was injured in a work-related accident on July 29, 2010, when a heavy metal door closed on her right arm and pinned her against a door frame.  She returned to work a few days later, but was unable to perform her regular CSO

2

duties.  She was thus placed on light-duty status and temporarily assigned to a position as an inactive records desk clerk.

HCSO standard operating procedure 213.00 defines "light duty" as a temporary disability status.  Pursuant to SOP 213.00, light-duty positions are not available to HCSO employees on a permanent basis.  Rather, they are temporarily available so that employees can work at full salary while they recover from an illness or injury.  SOP 213.00 requires a medical due process hearing when an employee has been on light-duty status for 270 days during a two-year period.  The purpose of the hearing is to determine whether the employee can return to full duty within a reasonable period of time.  If not, the employee is subject to a non-disciplinary dismissal.

Plaintiff was on light-duty status from August 2010 until her termination in June 2011.  During that time, Plaintiff was evaluated by several workers' compensation doctors.  Dr. Stuart Goldsmith, an orthopedic surgeon, examined Plaintiff in September 2010.  He diagnosed her with a contusion/sprain of her right shoulder, right hip, and lower back, and prescribed physical therapy.  After several months of therapy and evaluation, Dr. Goldsmith determined that Plaintiff had reached maximum medical improvement ("MMI") and discharged her with no work restrictions on February 10, 2011.  Dr. Thomas Newman, a neurologist, performed an EMG and a nerve conduction test on Plaintiff in December 2010.

3

The results were essentially normal, and determining that Plaintiff had reached MMI, Dr. Newman discharged her with no impairments or work restrictions in January 2011.

Plaintiff sought an evaluation and second opinion by Dr. Thomas Greene, an orthopedic surgeon, in March 2011. Dr. Greene ordered a cervical MRI, which revealed disc abnormalities and spinal stenosis with cord compression.[1] Dr. Greene noted that the abnormalities were degenerative and probably were not caused, although they possibly were aggravated, by the July 2010 accident. He recommended evaluation by an orthopedist or neurosurgeon, but placed Plaintiff at MMI status with no impairment or restrictions as of April 26, 2011.

In the meantime, Defendant kept Plaintiff abreast of her accumulated light-duty days and of the requirement, pursuant to SOP 213.00, that she return to full duty after 270 days. On January 6, 2011, HCSO risk management director Richard Swann sent Plaintiff a letter informing her that she had been on light-duty status for 162 days, and that she would be subject to termination if she did not either return to full duty by April 24, 2011 or obtain a discretionary extension. Assuming she was not able to resume full duty in her CSO position by that date, the letter encouraged Plaintiff to contact Swann to discuss possible ADA accommodations and civil service application for other jobs in the HCSO.

---

[1] Plaintiff had previously refused to have an MRI because of claustrophobia.

4

In response to the January 6 letter, Plaintiff sent a handwritten note to Swann on April 3, 2011. Plaintiff stated in the note that she was still having diagnostic procedures to find out why she had not fully recovered from her injuries. She requested "an extension to continue to receive care" so that she could "get better and return to full duty 100%." However, she did not specify the length of the requested extension or suggest any other accommodations that would enable her to return to full duty by April 24, 2011, either in her CSO position or in any capacity.

On April 11, 2011, Swann sent Plaintiff a second letter concerning her light-duty status. The letter informed Plaintiff that she had been on light duty for 256 days, and advised her that she was expected to return to full duty by April 24, 2011, pursuant to SOP 213.00. It again encouraged Plaintiff to contact Swann to discuss potential ADA accommodations and a civil service application for other jobs if she was unable to resume her full-duty CSO position by that date. Plaintiff was familiar with the HCSO's online job search and application process, and she had used it in the past. However, she did not submit any applications or otherwise respond to the April 11 letter.

On April 15, 2011, Defendant sent Plaintiff notice of a non-disciplinary medical due process hearing pursuant to SOP 213.00.[2] The notice informed

---

[2] Plaintiff received a second notice on May 3, 2011. It was identical to the first, except it rescheduled the due process hearing from April 27, 2011 to May 24, 2011, to account for Plaintiff's accrued sick and vacation time.

5

Plaintiff that she had exceeded 270 days of light-duty status in a two-year period, and that a hearing was thus required to determine her prospects for returning to full duty.  It advised Plaintiff that the hearing could result in her dismissal, and that possible topics for discussion at the hearing were application of the ADA and options for alternative employment within the HCSO or in the civil service system. Plaintiff did not submit any applications, and she did not contact Swann to discuss accommodations, job opportunities, or any other topic identified in the notice.

A hearing panel, led by Swann, conducted Plaintiff's due process hearing on May 24, 2011.  Swann opened the hearing by explaining that full-duty service by every employee is essential to the efficient operation of the HCSO, and that SOP 213.00 thus limits light-duty eligibility to 270 days within a two-year period.  It was noted that Plaintiff had been in a light-duty status for 299 days, and Swann asked whether she would be able to return to full duty within a reasonable period of time.  Plaintiff responded that her most recent MRI showed serious spinal damage, and that she could not estimate when she would be able to return to full duty.  She confirmed that she could not perform the essential duties of her CSO position, and she did not suggest any accommodations that would enable her to immediately resume full duty in any capacity.

At the conclusion of the hearing, Swann informed Plaintiff that the panel had decided to recommend her termination.  Although Plaintiff had not applied for any

other jobs, she asked if she had the "option of . . . doing something else." Swann told Plaintiff that she would be considered for any full-duty position she was qualified and able to do with her medical condition, but he noted that she had not submitted any applications or even identified a potentially suitable position. It was clarified that Plaintiff's termination was non-disciplinary, and that she would remain eligible for any benefits she had accrued while working for the HCSO.

A few days after the due process hearing, Plaintiff consulted with Dr. Larry Fishman, a neurosurgeon, concerning her cervical disc abnormalities. Dr. Fishman determined that Plaintiff had a large herniated disc in her cervical spine, with cord compression.[3] He recommended immediate spinal fusion surgery to prevent spinal cord damage, and he performed the surgery on June 7, 2011. A few months after the surgery, Dr. Fishman examined Plaintiff and determined that she was at MMI as of August 19, 2011, with no restrictions except heavy lifting. However, Plaintiff claims that she continued to experience constant and severe pain after the surgery.

Consistent with the recommendation of the due process panel, Plaintiff was dismissed from her employment with the HCSO on June 10, 2011. The stated reason for her dismissal was a "demonstrated physical impairment, with or without reasonable accommodations, that prevents [her] from performing the essential

---

[3] Dr. Fishman concurred with Drs. Newman and Greene that her cervical damage was likely unrelated to her July 2010 accident.

7

functions of [her] position."  Plaintiff did not, at any time after her termination, apply for any other positions at the HCSO.

In November 2011, Plaintiff submitted a claim to the HCSO for disability benefits.  In support of her claim, Plaintiff presented the results of an examination conducted by her orthopedic surgeon and independent medical examiner, Dr. Paul Zak, on November 11, 2011.  Dr. Zak found that, as of the date of his examination, Plaintiff was temporarily totally disabled and not at MMI as a result of pain and physical limitations caused by her cervical disc problems.  Nevertheless, the HCSO denied Plaintiff's claim for benefits, citing a lack of competent evidence that her work-related accident was a major contributing cause of her disability.

Plaintiff subsequently applied for social security disability benefits.  In support of her application, Plaintiff asserted that she was disabled and unable to work.  Based on that assertion, and presumably on supporting documentation provided by her treating doctors, Plaintiff was approved for benefits in April 2012.  In her deposition in this case, Plaintiff confirmed that, as of January 2014, she still is unable to work because of continuing physical limitations, including nerve damage and constant pain, and that she currently receives disability benefits.

## II.    Procedural History

Following her termination, Plaintiff filed this lawsuit asserting disability

8

discrimination and retaliation claims under the ADA and the FCRA.[4]  Defendant

moved for summary judgment, and the district court granted its motion.  The court

concluded that Plaintiff was not a "qualified individual" as required to support a

disability discrimination claim under either the ADA or the FCRA.  In addition, the

court determined that Plaintiff's only specific request for an accommodation of her

disability—an indefinite extension of her light-duty status—was unreasonable as a

matter of law.  As to her retaliation claims, the court found no evidence of a causal

link between Plaintiff's protected expression of requesting an accommodation and

her termination, which was the only alleged adverse action.

## DISCUSSION

### I.    Standard of Review

We review the district court's order granting summary judgment de novo,

"viewing all the evidence, and drawing all reasonable inferences" in favor of

Plaintiff.  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).

Summary judgment is only proper if there are no genuine issues of material fact,

and Defendant is entitled to judgment as a matter of law.  *Id.*

---

[4]  Plaintiff also asserted a workers' compensation retaliation claim under Fla. Stat. § 440.205, a Title VII race discrimination claim, and interference and retaliation claims under the Family Medical Leave Act ("FMLA").  The district court remanded Plaintiff's worker's compensation claim to state court and granted summary judgment on her Title VII and FMLA claims.  Plaintiff does not appeal those decisions.

9

## II.    Plaintiff's Disability Discrimination Claims

The ADA prohibits discrimination "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  To prevail on her disability discrimination claim under the ADA, Plaintiff must show that:  (1) she is disabled, (2) she was a "qualified individual" when she was terminated, and (3) she was discriminated against on account of her disability.  *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003).  Plaintiff's disability discrimination claim under the FCRA includes the same essential elements.  *See Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263–64 (11th Cir. 2007) ("Claims raised under the Florida law are analyzed under the same framework as the ADA.").

The issues in this case are narrow.  The parties agree that Plaintiff is disabled.  And Plaintiff concedes that, at the time of her termination, she was not "qualified" without some form of accommodation, because she could not perform the essential duties of her CSO position.  The only question is thus whether Defendant discriminated against Plaintiff by failing to provide a reasonable accommodation that would have enabled her to perform either her CSO duties or the essential duties of another position for which she was qualified.  *See* 42 U.S.C. § 12111(8) (defining the term "qualified individual" to mean "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires").

10

The ADA requires an employer to make "reasonable accommodations" to an otherwise qualified employee with a disability, "unless doing so would impose [an] undue hardship." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 U.S.C. § 12112(b)(5)(A) and 29 C.F.R. § 1630.9(a)). An accommodation is only reasonable if it allows the disabled employee to perform the essential functions of the job in question. *Id.* What constitutes a reasonable accommodation depends on the circumstances, but it may include "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position" among other things. 42 U.S.C. § 12111(9)(B).

The employee has the burden of identifying an accommodation and demonstrating that it is reasonable. *Lucas*, 257 F.3d at 1255–56. Assuming she cannot do so, the employer has no affirmative duty to show undue hardship. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000). Moreover, an employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363–64 (11th Cir. 1999) ("[T]he initial burden of requesting an accommodation is on the employee. Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her.").

Generously construing her communications to Defendant prior to and during

11

the May 24 due process hearing, Plaintiff proposed two accommodations:  (1) an indefinite extension of her light-duty status, and (2) reassignment to some other, unspecified position.  As discussed below, we agree with the district court that neither proposal was reasonable.  We further agree that Defendant is not liable for failing to engage in an "interactive process" to identify a different accommodation, as Plaintiff suggests.  Accordingly, the district court properly granted summary judgment to Defendant on Plaintiff's disability discrimination claims.

### A.    Indefinite Extension of Light-Duty Status

In her April 3 handwritten note to Swann, Plaintiff requested "an extension to continue to receive care" so that she could "get better and return to full duty 100%."  Presumably Plaintiff was referring to an extension of her light-duty status for some time beyond the April 24, 2011 date that she was required by SOP 213.00 to return to full duty.  But Plaintiff did not suggest a time frame for when she would be able to resume her full-duty position, and she later admitted at the due process hearing that she did not know how much time she needed or whether any amount of time would be sufficient.  As the district court correctly held, Plaintiff's request for an indefinite extension of light-duty status was unreasonable as a matter of law.  *See Wood*, 323 F.3d at 1314 ("The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future.").

To the extent Plaintiff intended to request a permanent light-duty position, it

12

is undisputed that no such position existed.  SOP 213.00 provides that every HCSO

employee is essential to its efficient operation, and that eligibility for light-duty

status is thus limited to 270 days during a two-year period.  Defendant was not

required by the ADA to create a permanent light-duty position especially for

Plaintiff.  *See Sutton v. Lader*, 185 F.3d 1203, 1211 (11th Cir. 1999) (holding that

the Rehabilitation Act did not require an employer to create a light-duty position

for a disabled plaintiff); *Stewart v. Happy Herman's Cheshire Bridge*, *Inc.*, 117

F.3d 1278, 1286 (11th Cir. 1997) ("Stated plainly, under the ADA a qualified

individual with a disability is not entitled to the accommodation of her choice, but

only to a reasonable accommodation." (internal quotation marks omitted)).

### B.    Reassignment

At the conclusion of the May 24 due process hearing, Plaintiff asked

whether she had the "option of . . . doing something else."  Construing her

statement as a request for reassignment, Plaintiff did not support the request with

any evidence that there was a specific, full-duty vacant position she was qualified

for and could have done, given her medical condition.  *See Duckett v. Dunlop Tire*

*Corp.*, 120 F.3d 1222, 1224–25 (11th Cir. 1997) ("[T]he issue of whether an

employee is an otherwise qualified individual and whether a reasonable

accommodation can be made for that employee is determined by reference to a

specific position.")

In opposition to Defendant's motion for summary judgment, Plaintiff produced records showing numerous vacancies in the HCSO during the time she was on light duty.  But again, Plaintiff did not ever request reassignment to a specific position or provide any information that would have enabled Defendant to determine whether she could perform the essential duties of a vacant position given her physical limitations.  Plaintiff's testimony at the due process hearing suggests that she could not have returned to full duty in any capacity.  And Plaintiff stated in her deposition that she still could not work, and that she had been approved for and was receiving disability benefits on that basis.  Plaintiff does not explain how she would nevertheless be able to perform the essential duties of the vacant positions she has identified, beyond her conclusory statement that there were jobs she "believe[s] she could have performed" with additional, unspecified accommodations.  *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797– 98 (1999) (providing that the "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim" but "an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work").

Moreover, Plaintiff admits that she did not apply for any position.  The civil service rules governing the HCSO require that an employee submit a civil service application and be placed on a list of qualified employees prior to being hired to a

14

position.  For that reason, Plaintiff was advised multiple times that, if she could not return to full duty in her CSO position at the expiration of her light-duty eligibility, she should consider submitting a civil service application for other positions. Plaintiff was familiar with the HCSO's online job search and application process and had used it in the past, but she simply did not avail herself of the process in this case.  The ADA does not require Defendant to reassign Plaintiff in violation of its governing civil service rules.  *See Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1306 (11th Cir. 2000) ("The ADA does not require accommodations . . . that contravene the seniority rights of other employees under a collective bargaining agreement.").

## C.    Failing to Initiate an Interactive Process

Finally, the district court properly rejected Plaintiff's claim that Defendant failed to initiate an "interactive process" to identify a reasonable accommodation, as required by ADA regulations.  The regulations state that an employer may in some circumstances need to "initiate an informal, interactive process" with a disabled employee to determine the appropriate reasonable accommodation.  29 C.F.R. § 1630.2(o)(3).  As the district court noted, Defendant tried to initiate such a process by encouraging Plaintiff to (1) contact Swann to discuss ADA accommodations and (2) submit a civil service application for any other positions Plaintiff believed she was qualified and able to do.  Plaintiff's only response was to

15

request an indefinite extension of her light-duty status, an unreasonable accommodation as a matter of law. Any failure in the interactive process must therefore be attributed to Plaintiff.

Moreover, Plaintiff has failed to identify any reasonable accommodation that would have allowed her to return to full duty within the time required by SOP 213.00. Her request for indefinite light-duty status is unreasonable as a matter of law, and her request for reassignment is unsupported by evidence that it would have enabled her to perform the essential functions of any specific, vacant full-duty position. Consequently, there is no basis for imposing liability on Defendant for failing to engage in an "interactive process" to identify accommodations. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) ("[W]here a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant.").

## III.   Plaintiff's Retaliation Claim

The ADA prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA. 42 U.S.C. § 12203(a). To prevail on her ADA retaliation claim, Plaintiff must show that: (1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two. *Lucas*, 257 F.3d at 1260. The first element may be met by a request for a reasonable accommodation. *See*

16

*Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998).  The third element requires a showing of but-for causation.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533–34 (2013).

In support of her retaliation claim, Plaintiff argues that she was terminated because she requested an accommodation.  Assuming Plaintiff's request for indefinite extension of her light-duty status and reassignment constitute protected expression, there is no evidence that either request was in any way related to her termination.  Plaintiff did not request the extension until after being advised that she was subject to dismissal pursuant to SOP 213.00, and she did not request reassignment until after being informed that the hearing panel had decided to recommend her termination, negating any logical inference of causation.  In addition, all of the evidence in the record shows that Plaintiff was terminated solely as the result of her inability to return to full duty at the expiration of her eligibility for light-duty status under SOP 213.00.  As there is no evidence to support causation, the district court properly granted summary judgment on Plaintiff's retaliation claim.

## CONCLUSION

For the reasons stated above, we find no error in the district court's order granting summary judgment to Defendant on Plaintiff's claims.  Accordingly, we affirm.

17