[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-11217
Non-Argument Calendar

————————————————

D.C. Docket No. 1:16-cv-02687-RWS

HEATHER CONNELLY,

Plaintiff-Appellant,

versus

WELLSTAR HEALTH SYSTEM, INC.,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(January 9, 2019)

Before JILL PRYOR, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Heather Connelly appeals the district court's grant of summary judgment in

favor of her former employer, WellStar Health System, Inc., on her claims of (1)

failure-to-accommodate her disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, (2) discriminatory termination in violation of the ADA, and (3) retaliation under both the ADA and the Family Medical Leave Act, 29 U.S.C. § 2601.  The district court concluded that Connelly could not demonstrate that WellStar discriminated against her by failing to accommodate her disability because she never requested an accommodation. With respect to Connelly's claims for discriminatory termination under the ADA and retaliation under both the ADA and FMLA, the district court assumed (without deciding) that she could establish a prima facie case, but also found that she had failed to rebut WellStar's proffered "legitimate, non-discriminatory reason" for firing her—namely, that she came to work impaired in violation of the company drug policy.  After careful review of the record and the briefs, we affirm.[1]

The facts are known to the parties; we do not repeat them here except as necessary.

# I

## A

---

[1] We review *de novo* a district court's grant of summary judgment, construing all facts and drawing all reasonable inferences in favor of the nonmoving party. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018).  Summary judgment is appropriate when the record evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

First, we consider Connelly's discriminatory-termination claim. The ADA prohibits an employer "from discriminating based upon the known physical or mental impairments of a qualified individual with a disability," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), including by discharging an employee based on her disability. 42 U.S.C. § 12112(a). An employee may demonstrate discrimination by either direct or circumstantial evidence. Direct evidence generally consists of "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor[.]" *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (quotations omitted). Circumstantial evidence, by contrast, requires an inferential leap, suggesting—but not on its face proving—discriminatory intent. *See id.* at 1270–71.

In evaluating ADA claims of discrimination based on circumstantial evidence, we use the *McDonnell Douglas* burden-shifting framework. *Cleveland v. Home Shopping Network*, 369 F.3d 1189, 1193 (11th Cir. 2004). Under this framework, an employee bears the initial burden of establishing a prima facie case of discrimination by showing that she (1) is disabled (2) is a qualified individual, and (3) experienced unlawful discrimination because of her disability. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007). If an employee makes this showing, the burden shifts to her employer to "articulate a legitimate,

3

non-discriminatory reason" for the challenged action. *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)). If the employer does so, the burden shifts back to the employee to show that the employer's proffered reason is mere pretext. *Id*. at 1242–43.

To establish pretext, an employee must present evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id*. at 1243 (citation omitted). An employee may do this by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the employer's proffered reasons that a reasonable factfinder would find them "unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (*per curiam*) (citation omitted). If, by contrast, the proffered reason is one that might motivate a reasonable employer, the employee must meet and rebut the reason directly. *Chapman*, 229 F.3d at 1030.

An employer's departure from its normal policies and procedures can, in some cases, serve as evidence of pretext. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006). But mere failure to follow operating procedures, without more, does not necessarily suggest that an employer was motivated by illegal discriminatory intent or that its proffered reason for

4

termination was pretextual. *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355–56 (11th Cir. 1999). Rather, to establish pretext based on failure to follow internal procedures, a plaintiff must show that the employer's "deviation from policy occurred in a discriminatory manner." *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002).

Importantly here, an employer's honest belief that an employee violated its policies can constitute a legitimate reason for termination even if the employer's belief may have been mistaken or wrong. *See Smith v. PAPP Clinic, P.A.*, 808 F.2d 1449, 1452–53 (11th Cir. 1987). This Court has reiterated multiple times that "[w]e do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (quoting *Chapman*, 229 F.3d at 1030). "[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir.1984).

## B

The district court here did not err in granting summary judgment to WellStar on Connelly's discriminatory-termination claim. Assuming for the sake of

5

argument that Connelly is able to establish a prima facie case of discrimination, she has failed to rebut WellStar's proffered "legitimate, non-discriminatory reason" for her termination by alleging any specific evidence that would permit a reasonable factfinder to conclude that WellStar's reasons were pretextual. *See Wascura*, 257 F.3d at 1242.

To start, the parties agree that WellStar's company policy clearly states as follows:

> [E]mployees who report to work or perform work while impaired due to the influence of a prescribed medication, the use of which has not been reported previously, will be treated as having reported to work impaired or under the influence of a drug, and thus in violation of the Plan. Such a violation will result in disciplinary action, which may or may not include termination depending on the circumstances.

Connelly's termination report stated that "[she] reported to work impaired . . . in violation of WellStar Policy" and that she was terminated "due to [her] violation of the policy." Connelly has not provided any basis to question that she was impaired (she admits that she was) or that she had undisclosed prescription drugs in her system (she admits that she did). Instead, to rebut WellStar's reason, Connelly alleges that it improperly terminated her solely for coming to work impaired—a result of her depressive disorder. She contends that because WellStar did not consult a physician to determine whether the unreported drugs *caused* the impairment its proffered reason is pretextual.

6

This conclusion does not necessarily follow.  Even if WellStar was mistaken that Connelly was "impaired *due to the influence of* a prescribed medication," it certainly—as is sufficient under our precedent—could have believed this to be the case based on the fact that she was both "impaired" and using "a prescribed medication, the use of which ha[d] not been reported previously" in violation of its policy.  *See Smith*, 808 F.2d at 1452–53 (holding that an employer's honest belief that an employee violated its policies can constitute a legitimate reason for termination even if the employer's belief may have been mistaken or wrong).

 Connelly points to several other facts as suggesting that WellStar's reason for terminating her was pretextual: (1) that her supervisor, Elizabeth Chamblee, stated that Connelly "was having another one of her episodes" on June 22; (2) that the doctor's note she received the morning of June 22 confirming that she was able to return to work that day indicated that the doctor did not find her mental state amiss; and (3) that WellStar did not follow its own policies in providing her with a copy of her drug-test results.  But none of these specifically rebuts WellStar's reason for terminating her or demonstrates "such weakness[], implausibilit[y], inconsistenc[y], incoherenc[y] or contradiction[]" that a reasonable factfinder would find WellStar's reason "unworthy of credence."  *Springer*, 509 F.3d at 1348.

First, the employee who remarked that Connelly was experiencing another "episode" on June 22 also stated that the episode was "much more severe than the

7

ones she's had in the past," to the point that she felt Connelly "was breaking" or "snapping."  To the extent that Connelly argues that WellStar did not have an honest belief that her June 22 "episode" was drug-enhanced, this testimony cuts against rather than in favor of her position.

Second, the doctor's note releasing Connelly to work on the morning of June 22 came from a follow-up to her recent rectal surgery, not as a mental-health assessment or a professional opinion on her state of mind.  Although Connelly points to this note as evidence that she was not impaired that morning despite having taken prescription drugs the *previous* day, the post-operation examination note does not directly rebut WellStar's good-faith belief that prescription drugs led to her inability to perform her job later that day.

Finally, Connelly complains that WellStar did not complete an employee-conference form giving her an opportunity to dispute the positive drug-test result in accordance with its own internal policies.  While this may have been a deviation from company policy, there is no basis to suggest that the deviation occurred "in a discriminatory manner."  *Rojas*, 285 F.3d at 1344 n.4; *Mitchell*, 186 F.3d at 1355–56.  Further, as already explained, Connelly does not contest that she had undisclosed prescription drugs in her system that day.  Because Connelly failed to

8

rebut WellStar's proffered reason for her termination, the district court did not err in granting WellStar summary judgment on her discriminatory-termination claim.[2]

## II

Next, we consider Connelly's claim that WellStar discriminated against her by failing to provide her with reasonable accommodations for her disability. Our case law makes clear that "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly*, 492 F.3d at 1262. Unlike in the discriminatory-termination context, though, an employee alleging failure to accommodate need not show that her employer enforced a policy in a discriminatory manner. *Id.* Likewise, the employer need not show that it had legitimate non-discriminatory reasons for its actions, and the employee need not establish that the employer's stated reasons were pretextual. *Id.* Instead, an employee need only identify an accommodation and demonstrate that it is reasonable. *Id.* Importantly, though, an employer's duty

---

[2] Connelly also faults the district court for analyzing both her discrimination and retaliation claims under the *McDonnell Douglas* framework instead of under the alternative "convincing mosaic" standard. But because Connelly argued the "convincing mosaic" standard for the first time in her objections to the magistrate judge's Report and Recommendation, the district court had discretion not to consider this argument. *See Williams v. McNeil*, 557 F.3d 1287, 1290–91 (11th Cir. 2009). In any event, because the district court assumed without deciding that Connelly could set out a prima facie case of discrimination and retaliation, the *McDonnell Douglas* framework had no ill effect—regardless of the standard used, Connelly is unable to show that WellStar intentionally discriminated or retaliated against her based on her disability.

to provide a reasonable accommodation is not triggered unless and until the employee makes a specific demand for an accommodation. *Frazier-White v. Gee*, 818 F.3d 1249, 1255–56 (11th Cir.), *cert. denied*, 137 S. Ct. 592 (2016).

Here, WellStar was not required to provide Connelly with a certain amount of time to compose herself after an emotional episode, as Connelly contends, because Connelly presented no evidence that she ever *requested* such an accommodation. *See Frazier-White*, 818 F.3d at 1255–56. Connelly asserts that this is irrelevant because WellStar accommodated her emotional outbursts on four occasions in the past. But the fact that WellStar has occasionally allowed Connelly to cool down or go home during emotional episodes does not mean that, in this instance, it violated the ADA by failing to provide her a disability-specific accommodation that she never requested. Because Connelly has not alleged that WellStar's duty to accommodate her was triggered by any request, the district court did not err by granting summary judgment to WellStar on her failure-to-accommodate claim.

## III

Finally, we consider Connelly's claims that WellStar retaliated against her (1) in violation of the ADA for requesting a reasonable accommodation and (2) in violation of the FMLA for exercising her right to medical leave. Because retaliation claims under the ADA and FMLA are analyzed using substantially the

10

same framework, we consider both claims together. *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018)

To state a retaliation claim under the ADA, an employee must show that her employer discriminated against her for opposing an act or practice made illegal under the ADA. *See* 42 U.S.C. § 12203(a); *Stewart*, 117 F.3d at 1287. Similarly, to state a retaliation claim under the FMLA, an employee must demonstrate that her employer intentionally discriminated against her based on having exercised an FMLA right—such as, for instance, taking FMLA leave. *See* 29 U.S.C. § 2615(a)–(b); *Jones*, 854 F.3d at 1270.

As with discriminatory-discharge claims, we evaluate claims of retaliation based on circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *Stewart*, 117 F.3d at 1287 (ADA); *Jones*, 854 F.3d at 1271 (FMLA). To establish a prima facie case in the context of a retaliation claim, an employee must show that "(1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Schaaf v. Smithkline Beecham Corp*., 602 F.3d 1236, 1243 (11th Cir. 2010) (citation omitted). And again, as in the discriminatory-discharge context, if an employee establishes a prima facie case of retaliation, the burden shifts to her employer to articulate a legitimate reason for the challenged action. *Jones*, 854 F.3d at 1271. If the employer does so, the burden shifts back to the

11

employee who must then show that the employer's proffered reason is mere pretext. *Id.*

Here, again, we must conclude that the district court did not err in granting summary judgment to WellStar. First, Connelly's claim that WellStar retaliated against her in violation of the ADA for requesting a reasonable accommodation fails because, as already explained, Connelly never requested an accommodation. Second, even assuming that Connelly is able to make out a prima facie case of retaliation under the FMLA, she has failed—for the reasons previously explained—to demonstrate that WellStar's proffered reason for her termination was mere pretext. To support her retaliation claim, Connelly relies on the same evidence that she cites to support her discriminatory-termination claim—comments by coworkers, her doctor's note, and WellStar's noncompliance with internal policies—and adds that the fact that she was terminated within a few weeks of returning from FMLA leave proves WellStar's retaliatory intent. Although "[c]lose temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection," *Hurlbert*, 439 F.3d at 1298 (citation omitted), this evidence serves only to establish Connelly's prima facie case of retaliation, *see Schaaf*, 602 F.3d at 1243. It does not rebut WellStar's "legitimate, non-discriminatory reason" for Connelly's termination—that she

12

reported to work impaired, in violation of the drug policy. Thus, the district court did not err by granting summary judgment to WellStar on Connelly's retaliation claims.[3]

## IV

To summarize, Connelly did not present evidence that she requested any accommodations that WellStar refused to provide. And WellStar's proffered reason for terminating Connelly is clearly one that could motivate a reasonable employer. Absent specific facts demonstrating pretext, then, Connelly has not met her burden to show intentional discrimination or retaliation based on her disability or her FMLA leave. Accordingly, we affirm the district court's grant of summary judgment in WellStar's favor.

**AFFIRMED.**

---

[3] Connelly also argues that summary judgment based on the "honest, good faith belief" doctrine in employment cases violates the Seventh Amendment. This Court has specifically rejected, however, the argument that summary judgment is constitutionally problematic in employment-discrimination cases simply because they involve examination of motive or intent. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919–20 (11th Cir. 2018).