[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11429

Non-Argument Calendar

_____

JOHN OIRYA,

Plaintiff-Appellant,

*versus*

MANDO AMERICAN CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:19-cv-00635-ECM-CWB

_____

Before ROSENBAUM, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Defendant Mando American Corporation ("Mando") terminated plaintiff John Oirya for sleeping on the job. Subsequently, Oirya filed this action alleging that Mando failed to accommodate his medical conditions that caused drowsiness and retaliated against him for requesting an accommodation and complaining about disability discrimination, all in violation of the American Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

On appeal, Oirya challenges: (1) the magistrate judge's order denying Oirya's second motion for leave to amend his complaint; and (2) the district court's order granting summary judgment in favor of Mando on Oirya's claims. After review of the parties' briefs and the record, we dismiss Oirya's appeal of the magistrate judge's denial of Oirya's motion to amend because we lack jurisdiction to review it. We affirm the district court's grant of summary judgment because Oirya failed to establish a *prima facie* case as to his failure-to-accommodate or his retaliation claims.

## I. BACKGROUND[1]

### A.    Mando's Employment Policies

Oirya worked at Mando as a training coordinator under the supervision of April Regier, the corporate training supervisor.

When promoted to training coordinator, Oirya was given Mando's salary employee handbook. The handbook included an ADA policy that (1) instructed employees to request an accommodation for a disability by notifying Human Resources and (2) reserved the right to request medical documentation. Similarly, the handbook instructed employees to report discrimination or retaliation to Human Resources.

The employee handbook also included a conduct policy that stated, "Some examples of misconduct, which may result in immediate termination, include, but are not limited to . . . [s]leeping on the job." Salaried employees were supposed to take their lunch breaks around midday, and they could also take comfort breaks throughout the day as needed. Comfort breaks allowed employees to take a few moments to regroup, if needed. It was acceptable for employees to sleep during their lunch break, but not while working.

---

[1] These are the summary judgment facts, construed in the light most favorable to Oirya, as the non-moving party. *See Batson v. Salvation Army*, 897 F.3d 1320, 1322 (11th Cir. 2018).

**B.      Oirya's Medical Conditions Causing Drowsiness**

Oirya suffered from several medical conditions, including major depression and PTSD, for which he received treatment at Columbus Psychological Associates.  And Columbus diagnosed Oirya with a sleep disorder.  Oirya also had chronic bouts of gastrointestinal problems, including food poisoning, stomach flu, and severe stomach pains.  Oirya maintained that he notified all of his supervisors, including Regier, of these disabilities.  As a result of his conditions, Oirya sometimes had trouble sleeping at night and then could not stay awake at work.  To treat his symptoms, Oirya took over-the-counter medications that also made him drowsy.

**C.      February 2, 2018: Oirya Disciplined for Sleeping on Job**

In late 2018 and early 2019, Oirya's supervisor Regier was advised by Mando's then-Human Resources manager, Darlene Schumacher, that three Mando employees, Brandon Yoon, Kayte Dulaney, and Felix Owen, had observed Oirya on multiple occasions sleeping at his desk while not on a break.  Because sleeping on the job violated Mando's conduct policy, Regier decided to issue Oirya a "Last Chance Agreement," a decision approved by senior Human Resources manager, Gerald Wyatt.

At a February 2, 2018 meeting, Regier presented Oirya with the Last Chance Agreement.  In the Last Chance Agreement, Regier noted that on February 1, 2018, Oirya was witnessed violating Mando's conduct policy "by sleeping on the job and abusing [his] designation [sic] lunch period."  The Last Chance Agreement stated that, in lieu of termination, Oirya was being

placed under the terms of the Agreement and was required to review and sign Mando's conduct policy. The Last Chance Agreement stated that Oirya's continued employment was contingent on following Mando's policies for conduct and behavior and would remain in effect for two years.

Oirya denied the accusations of the other Mando employees that he had been sleeping on the job and challenged Regier to produce evidence supporting the accusations. In response, Regier conceded she had not investigated the accusations and did not have evidence to prove them.

Oirya explained to Regier about his diagnosed medical conditions and that he "took frequent breaks whenever [his] medical disabilities were active, during which [he] took drowsy-causing stomach flu capsules to manage [his] bouts of stomach flu symptoms." Oirya also told Regier he laid down on his back during those breaks until his stomach pains subsided. Oirya said that these accommodations—frequent breaks and lying down during breaks—"enabled [him] to resume the essential functions and responsibilities of [his] job." Oirya pointed out that his prior supervisors when he worked as an operator 2 at Mando had "readily granted [him] the reasonable accommodation of breaks."

Oirya refused to sign the Last Chance Agreement. Oirya complained that it was "unfairly issued" and "devoid of any meaningful due process" since Regier did not obtain his side of the story and witness accounts. Oirya asked Regier to "grant [him] an interactive process" before taking disciplinary action that included

advanced notice in the form of a full written complaint, a "full evidentiary hearing," a written decision, and an opportunity to appeal.

Oirya also asked for an opportunity to respond to the Last Chance Agreement. Regier agreed and told Oirya she would place his response in the file with the agreement.

### D.    February 9, 2018: Oirya's Written Response to Discipline

A week later, on February 9, 2018, Oirya sent a written statement to Regier explaining why he had not signed the Last Chance Agreement. Oirya's written explanation complained that: (1) there was a lack of meaningful due process before the Last Chance Agreement was issued; (2) the "alleged incident" was protected by Mando's ADA policy; and (3) the "prescribed solutions were provided at the disciplinary meeting" rather than when the employees' reports of sleeping on the job were made and could be investigated.

Oirya's written explanation also stated that at the time of the February 1 "alleged incident," he "was suffering the effects of food poisoning with stomach flu symptoms, due to having eaten sandwiches that were 'on sale' at Walmart," for which he had taken flu capsules and antacid medication. Oirya maintained that Mando's ADA policy had "an inherent 'accommodation for a disability' within it, in the form of breaks. Accordingly, the food poisoning did not require [him] to ask for costly accommodation, since the company-provided breaks are already provided for in this policy."

Regier reviewed Oirya's written explanation and gave a copy to Human Resources managers, including Schumacher and Wyatt, to review and to place it in Oirya's file. Oirya's written explanation did not change Regier's position on the propriety of the Last Chance Agreement. Regier had received numerous reports of Oirya sleeping on the job and did not believe she needed to interview him before disciplining him. Regier also did not believe Oirya's sleeping caused by food poisoning was protected by Mando's ADA policy. In any event, Oirya had never asked Regier "for an accommodation for a medical condition, additional breaks, or any other changes to his job duties or responsibilities due to a medical condition."

Similarly, Schumacher did not consider Oirya's written explanation to be a request for an accommodation. Schumacher read the written explanation as Oirya disagreeing with the Last Chance Agreement and complaining that he was not interviewed before being issued discipline. Schumacher said that Mando did not require employees to be interviewed before being disciplined and that it was not unusual for employees to be disciplined before being interviewed. Like Regier, Schumacher did not think Oirya's food poisoning was a disability under the ADA, and Oirya never asked for additional breaks due to his medical conditions.

### E.    April 2018: Oirya Sent Home for Food Poisoning

In April 2018, Oirya reported to Human Resources manager Schumacher that he was not feeling well after eating at a pizza buffet. Schumacher consulted with Regier and then sent Oirya

home, telling him to return to work with a doctor's note.  Oirya was treated at Auburn Urgent Care for stomach pains, diagnosed with food poisoning, and prescribed Zofran and acidophilus capsules.

### F.    December 3, 2018: Oirya Terminated for Sleeping on Job

In November 2018, Mando's new Human Resources manager, Audie Swegman, notified Regier that two Mando employees, Shinae Pak and Beth Yates, had witnessed Oirya sleeping on the job, and one of them had taken a photograph of Oirya sleeping at his desk.  In particular, after the lunch break, at 3:00 p.m., Pak observed Oirya sleeping for a long period of time at his desk.  Yates also observed Oirya sleeping, "laid back in his chair at his desk," and discussed it with Pak, who used her cell phone to take the picture.[2]

Based on the employees' reports and the photograph, Regier and Swegman concluded Oirya had been sleeping on the job in violation of Mando's conduct policy.  Regier told Swegman about the Last Chance Agreement, and the two agreed that Oirya's termination was warranted.  Before concurring in Regier's recommendation, Swegman reviewed Oirya's personnel file, including the Last Chance Agreement and Oirya's written explanation.

---

[2] Oirya did not dispute that he was sleeping at his desk.  When asked at his deposition whether he fell asleep on the job in November 2018, Oirya said he could not recall.

On December 3, 2018, after obtaining approval from senior Human Resources manager James Kendrick, Swegman and Regier met with Oirya. Swegman notified Oirya that he was terminated for sleeping on the job while on the Last Chance Agreement.

## II.  MOTION TO AMEND COMPLAINT

In September 2019, Oirya, proceeding with counsel, filed a complaint alleging two ADA claims. Count I alleged that Mando denied Oirya a reasonable accommodation for his disabilities of a "sleep disorder that was a symptom of clinical major depression and PTSD, and bouts of severe food poisoning and allergies." Count II alleged that Mando terminated Oirya in retaliation "for requesting a reasonable accommodation, and for opposing or protesting against unlawful disability discrimination" when he complained to Mando about being deprived of the opportunity "to confront the disability-related allegations" during the disciplinary process.

The deadline to amend pleadings was April 9, 2020. On November 24, 2020, seven months after the deadline, Mando filed a first motion to amend his complaint to add two new ADA claims—Count III alleging disparate treatment and Count IV alleging wrongful termination. As to the disparate treatment claim in Count III, Oirya's proposed amended complaint alleged that a "similarly situated" employee, Veronica Alfa, was accused of sleeping on the job, and Mando treated her more favorably by giving her a reasonable accommodation for her disability, which required medication that caused drowsiness.

The district court denied Oirya's motion to amend his complaint as untimely and concluded Oirya had offered "no good cause for the delay."

On March 14, 2021, Oirya filed a second motion for leave to amend his complaint. This time, Oirya sought to add two claims of gender discrimination under Title VII of the Civil Rights Act based on employee Alfa's more favorable treatment. Specifically, Oirya's proposed amended complaint alleged in Count III that he received disparate disciplinary treatment from Alfa and in Count IV that he was denied a reasonable accommodation that Alfa was granted.

After briefing on Oirya's second motion to amend concluded, Oirya's counsel filed a motion to withdraw, which the district court granted. In the same order, the district court referred the case to a magistrate judge pursuant to 28 U.S.C. § 636 "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate."

Thereafter, on January 14, 2022, the magistrate judge entered an order denying Oirya's second motion to amend his complaint as untimely. The magistrate judge found that Oirya lacked diligence in pursuing his proposed Title VII claims and had not shown good cause for failing to seek leave to amend earlier. Oirya did not appeal the magistrate judge's order or otherwise object to it in the district court.

On appeal, Oirya now challenges the magistrate judge's ruling on his second motion to amend, arguing that he

demonstrated both diligence and good cause to excuse the untimeliness of his motion.[3]   Before we can consider Oirya's arguments that the magistrate judge erred, we must determine that we have jurisdiction to do so.  *See Peden v. Stephens*, 50 F.4th 972, 977 (11th Cir. 2022).

We ordinarily have jurisdiction to review only decisions of the district court that are "final."  28 U.S.C. § 1291.  This Court has long held that when a magistrate judge is proceeding under the supervision of the district court pursuant to § 636(b), its decisions "are not final orders and may not be appealed until rendered final by a district court."  *Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1066-67 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1359 (11th Cir. 2009) ("The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." (quotation marks omitted)).  Thus, where a party did not appeal a magistrate judge's order to the district court, we lack jurisdiction to review the magistrate judge's ruling on appeal.  *See Schultz*, 565 F.3d at 1362-63.

Here, the magistrate judge was proceeding under § 636(b) when he denied Oirya's second motion to amend his complaint.  Because Oirya did not challenge the magistrate judge's January 14, 2022 order in the district court, the order is not final and appealable under § 1291.  We therefore lack jurisdiction to review the magistrate judge's order denying the second motion to amend and

---

[3] On appeal, Oirya does not challenge the district court's denial of his first motion to amend as untimely.

must dismiss Oirya's appeal as to that ruling.  *See id.*; *Donovan*, 693 F.2d at 1066-67.

## III.  SUMMARY JUDGMENT

On appeal, Oirya, proceeding *pro se*, argues the district court erred in granting summary judgment to Mando on both his failure-to-accommodate and retaliation claims under the ADA.[4]  We address each claim in turn.[5]

## A.    Reasonable Accommodation Principles

The ADA prohibits an employer from discriminating against an employee because of his disability.  42 U.S.C. § 12112(a).  To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability.  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).    An employer unlawfully discriminates against a disabled employee when it fails to provide reasonable accommodations for known physical or mental

---

[4] We have appellate jurisdiction to review the summary judgment ruling because the district court adopted the magistrate judge's report and recommendation over Oirya's objection.  *See Schultz*, 565 F.3d at 1359-60

[5] We review *de novo* a district court's grant of summary judgment, "viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party."  *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (quotation marks omitted).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

23-11429                Opinion of the Court                13

limitations unless the accommodation would impose an undue hardship on the employer's business.  *Id.* at 1262; 42 U.S.C. § 12112(b)(5)(A).

A reasonable accommodation is a modification or adjustment that enables the employee to perform the essential functions of the position.  *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 399-401 (2002).  A reasonable accommodation depends on the circumstances, but can include modifying work schedules or policies.  *See* 42 U.S.C. § 12111(9)(B); *Barnett*, 535 U.S. at 402-03; *Frazier-White*, 818 F.3d at 1255.

"The employee has the burden of identifying an accommodation and demonstrating that it is reasonable."  *Frazier-White*, 818 F.3d at 1255.  Further, an employer's duty to provide a reasonable accommodation is not triggered unless the employee makes a specific demand for an accommodation.  *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).  If the employee provides this information, the employer *may* need to "initiate an informal, interactive process" with the employee to identify the employee's limitations resulting from the disability and determine the appropriate reasonable accommodation.  29 C.F.R. § 1630.2(*o*)(3); *Frazier-White*, 818 F.3d at 1257.  However, absent a specific request for an accommodation and a denial, "there can be no failure to accommodate under the ADA."  *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018).

**B.     Oirya's Failure-to-Accommodate Claim**

The district court did not err in granting summary judgment to Mando on Oirya's failure-to-accommodate claim.  For purposes of this appeal, we assume that Oirya met the first two prongs of a *prima facie* case—that is, that Oirya's medical conditions qualified as a disability and that he was a "qualified individual" under the ADA.

We agree with the district court, however, that Oirya did not satisfy the third prong because he failed to present evidence from which a jury could find that he made a specific demand for a reasonable accommodation.  And absent such a showing, Oirya did not trigger Mando's obligations to provide a reasonable accommodation or to engage in an interactive process with him and cannot prevail on his failure-to-accommodate claim.

In the February 2, 2018 meeting with Regier and in his follow-up written explanation, Oirya explained that his medical conditions and the medications he took sometimes made him drowsy at work and that he managed his drowsiness by taking frequent breaks.  Oirya also explained that he sometimes had gastrointestinal issues, which he managed by lying down on his back during his breaks.  But Oirya denied sleeping at his desk when not on breaks and claimed that other Mando employees' reports to the contrary were false.

More importantly, Oirya did not request that Regier modify any of Mando's work or break policies and schedules, such as asking for longer breaks or to be allowed to nap at his desk even

when not on a break. In fact, Oirya maintained that he did not need an accommodation from Mando because he was able to use the breaks that Mando already provided to manage his symptoms when they were active. In the February 2, 2018 meeting, Oirya specifically advised Regier that what he was already doing—taking frequent breaks and lying on his back during breaks—enabled him to perform the essential functions of his job.

Instead, Oirya's primary complaint to Regier was that it was unfair for her to issue a Last Chance Agreement without first investigating the employees' (false) reports that he was sleeping on the job and giving him a chance to defend himself. Contending he was deprived of "meaningful due process," Oirya asked Regier to change Mando's disciplinary procedures to provide him with written notice of the complaints against him, a full evidentiary hearing at which Oirya could present evidence and cross-examine witnesses, and a chance to appeal the decision.

Oirya's request to modify Mando's disciplinary procedures to give him due-process-type protections does not constitute a request for reasonable accommodation under the ADA. A reasonable accommodation is one that enables the employee to perform the essential functions of his job. *Holly*, 492 F.3d at 1256; *see also* 29 C.F.R. § 1630.2(*o*)(1)(ii) (defining "reasonable accommodation" to mean modifications or adjustments that enable an employee with a disability "to perform the essential functions" of a position).

Further, as part of the obligation to make a specific demand for an accommodation, "an employee must link her disability to her requested accommodation by explaining how the requested accommodation could alleviate the workplace challenges posed by her specific disability." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1333-34, 1335 (11th Cir. 2022) (involving a failure-to-accommodate claim under Section 504 of the Rehabilitation Act, which, in the employment context, applies the same standards as an ADA claim). "[I]f an employee does not require an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation . . . ." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020).

Oirya's requested modifications to Mando's disciplinary procedures were not ones that would alleviate workplace challenges posed by his disability or enable him to perform the essential functions of his job as a training coordinator. Rather, they would enable Oirya to challenge Regier's decision to discipline him for what Oirya said were false reports of sleeping on the job. Because, even under Oirya's version of events, he did not make a specific demand for an accommodation, Oirya failed to show Mando denied him a reasonable accommodation or that Mando had a duty to initiate an interactive process with him to determine whether there was a reasonable accommodation. *See Batson*, 897 F.3d at 1327, *Frazier-White*, 818 F.3d at 1255, 1257; *Gaston*, 167 F.3d at 1363.

## C.    ADA Retaliation Principles

The ADA prohibits retaliation against an individual "because such individual has opposed any act or practice made unlawful [by the Act] or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the Act]."  42 U.S.C. § 12203(a).

When a plaintiff relies on circumstantial evidence, courts evaluate an ADA retaliation claim using the same burden-shifting framework applied to Title VII retaliation claims.  *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021).  Under that framework, the plaintiff must first establish a *prima facie* case of retaliation.  *Batson*, 897 F.3d at 1328-29.  To establish a *prima facie* case of retaliation under the ADA, the plaintiff must show that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two.  *Id.* at 1329.

Here, the parties agree that Oirya's termination satisfied the second element, but dispute whether Oirya presented evidence of the other two elements of a *prima facie* case of retaliation.

As to the first element, an employee participates in protected expression when he opposes a practice the ADA makes unlawful or when he makes a request for a reasonable accommodation. 42 U.S.C. § 12203(a); *Frazier-White*, 818 F.3d at 1258.  To establish the first element, "it is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the [ADA]."  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328

(11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

As to the third causation element, the plaintiff need only "prove that the protected activity and the adverse action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quotation marks, ellipses, and brackets omitted). This element is satisfied if the plaintiff "provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." *Id*. (quotation marks and ellipses omitted). For temporal proximity alone to be sufficient circumstantial evidence of a causal connection, it "must be very close." *Id*. (quotation marks omitted). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id*. This Court has concluded that a one-month period between the protected activity and the adverse action was "not too protracted," but that "a three to four month disparity" was insufficient to show a causal connection. *Id*.

## D.    Oirya's Retaliation Claim

The district court did not err in granting summary judgment to Mando because Oirya failed to present evidence establishing a *prima facie* case of retaliation.

As to the first element, Oirya contends he engaged in protected activity during the February 2, 2018 meeting with Regier and in his February 9, 2018 written statement. As we have already

explained, Oirya did not show that he asked for a reasonable accommodation during these February 2018 interactions with Regier. Thus, Oirya did not establish that he had engaged in protected activity on that basis. *See Frazier-White*, 818 F.3d at 1258.

Opposing a practice that the ADA makes unlawful also constitutes protected expression. *See* 42 U.S.C. § 12203(a). Oirya contends he engaged in protected activity when he refused to sign the Last Chance Agreement. Even assuming Oirya's conduct—in either the meeting or in his follow-up written explanation—qualified under the ADA's opposition clause, we agree with the district court that Oirya did not present evidence establishing a causal connection between his February 2018 conduct and his December 3, 2018 termination. A span of ten months between Oirya's conduct and his termination, without more, is too temporally remote to permit a reasonable inference that the two were causally connected. *See Higdon*, 393 F.3d at 1220.

Finally, Oirya suggests that the act of taking a company-provided break to manage disability-related symptoms is itself protected activity under 42 U.S.C. § 12203(a) and that Mando terminated him for taking such breaks. Oirya argues that terminating an employee for exercising his ADA-protected rights violates the ADA.

This argument ignores that there was no evidence that Oirya requested additional breaks, was ever denied breaks, or was terminated for taking breaks. Even Oirya's evidence showed he was terminated for sleeping on the job while under the Last

Chance Agreement, not for taking breaks.  In any event, Oirya's argument conflates an ADA interference claim under 42 U.S.C. § 12203(b) with an ADA retaliation claim under 42 U.S.C. § 12203(a).  *See* 42 U.S.C. § 12203(b) (making it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, . . . any right granted or protected by" the ADA). Oirya did not assert an ADA interference claim in the district court.

Even when viewing the facts in the light most favorable to Oirya, a reasonable jury could not conclude that his termination was causally connected to any activity protected under the ADA. Because Oirya failed to establish a *prima facie* case, the district court properly granted summary judgment to Mando on his retaliation claim.

## IV.  CONCLUSION

In sum, we dismiss Oirya's appeal of the magistrate judge's order denying his second motion to amend his complaint for lack of appellate jurisdiction.  We affirm the district court's grant of summary judgment in favor of Mando on Oirya's failure-to-accommodate and retaliation claims under the ADA.

**DISMISSED IN PART, AFFIRMED IN PART.**