745 So.2d 386 (1999)
William A. LINAFELT, Appellant,
v.
BEVERLY ENTERPRISES-FLORIDA, INC., and Beverly Health and Rehabilitative Services, Inc., d/b/a Heritage Health Care Center-Florida, Appellee.
No. 98-3199.
District Court of Appeal of Florida, First District.
October 12, 1999.
Rehearing Denied December 1, 1999.
*387 William C. Owen and Zollie Maynard, of Panza, Maurer, Maynard and Neel, P.A., and D. Carlton Enfinger, Tallahassee, for Appellant.
Betsy E. Gallagher and J. Bowen Brown, of Gallagher & Howard, P.A., Tampa, for Appellee.
PER CURIAM.
Appellant, William A. Linafelt, appeals the trial court's entry of judgment in accordance with appellees' motion for directed verdict after a jury returned a verdict in favor of appellant and the trial court's denial of appellant's motion for a new trial on the issue of punitive damages. We affirm in part and reverse in part.
By all accounts, appellant was an exemplary employee of appellees for three years. However, in August of 1992, he was fired for committing a "category one" conduct violation. The parties generally agree about the facts surrounding appellant's termination. Appellant worked at least eight hours on August 12, 1992, but the hours were not continuous. Appellant arrived at work shortly before 6:00 a.m. and left some time after 10:00 a.m. before returning to work for another four hours that evening. However, the time sheet appellant submitted indicated that he had worked continuously from 5:48 a.m. to 2:15 p.m. Despite appellant's work record, the fact that he was not attempting to get paid for more hours than he had worked, and a long history of loose or non-enforcement of policies concerning time sheets, appellees terminated appellant's employment because he had "falsified" company records.
After his termination, appellant has been unable to find meaningful employment, despite his exemplary military service record and three-year record with appellees. One prospective employer testified that appellees gave appellant a negative reference, in which they said emphatically *388 to the employer that appellant could never be rehired by appellees and that he was not even allowed on the premises because of a "conduct violation" he committed. When appellees were pressed for more information, they would not explain the circumstances.
Under appellees' policies, a person who commits a "category one" offense cannot be rehired. Also, appellees' policies prohibit their employees from divulging any information about a former employee other than date of hire, position, and date of separation. The employee who violated this policy with the prospective employer testified that she was aware of appellees' policy. However, she testified that she could not recall ever receiving a reference call about appellant.
Appellant filed suit, claiming breach of the employment contract, defamation, and intentional interference with a business relationship. This court affirmed the dismissal of the breach of contract claim because appellant was an "at will" employee. See Linafelt v. Bev, Inc., 662 So.2d 986 (Fla. 1st DCA 1995) (Linafelt I). A jury trial was held on the remaining two claims. Before the trial began, the trial court excluded evidence of an unemployment commission hearing in which it was determined that appellant's incorrect time sheet, although technically a violation of company policy, did not give appellees probable cause to terminate appellant's employment and deny him unemployment compensation. At the close of appellant's case, the trial court granted appellees' motion for summary judgment on appellant's claims for punitive damages. The trial court then denied appellees' motion for directed verdict, and the jury found for appellant on both claims, awarding him about $370,000.00 in damages for the defamation and $600 for the intentional interference. However, the trial court then granted appellees' motion for judgment in accordance with their motions for directed verdict (formerly judgment notwithstanding the verdict). The trial court found that the issue at trial had become whether appellant was wrongfully terminated, rather than whether appellees had defamed and interfered with appellant. It concluded that appellant's evidence demonstrated that appellant had committed a "conduct violation," even if that violation should have been excused. Thus, there was no evidence to show that appellees had made a false or deliberately misleading statement to the prospective employer.

Defamation Claim
Prior to 1990, employers had a common law qualified privilege to discuss former employees with prospective employers without liability. See, e.g., Nodar v. Galbreath, 462 So.2d 803 (Fla.1984); Boehm v. American Bankers Insurance Group, Inc., 557 So.2d 91 (Fla. 3d DCA 1990). However, because the communication in this case related to appellant's "job performance," this case is governed by the Legislature's codification of the common law:
An employer who discloses information about a former employee's job performance to a prospective employer of the former employee upon request of the prospective employer or of the former employee is presumed to be acting in good faith and, unless lack of good faith is shown by clear and convincing evidence, is immune from civil liability for such disclosure or its consequences. For purposes of this section, the presumption of good faith is rebutted upon a showing that the information disclosed by the former employer was knowingly false or deliberately misleading, was rendered with malicious purpose, or violated any civil right of the former employee protected under chapter 760.
Sec. 768.095, Fla. Stat. (1997). The statute is an affirmative defense, so appellant first must demonstrate a prima facie case of defamation. The elements of a defamation claim include "a false and defamatory statement concerning another." Thomas v. Jacksonville Television, Inc., 699 So.2d 800, 803 (Fla. 1st DCA 1997). A defamatory *389 statement is one that tends to harm someone's reputation in the community or deters others from associating with the person. See id. Thus, in a situation like the one in the instant case, if a statement is both false and defamatory, then the burden is on a plaintiff to demonstrate by clear and convincing evidence that appellees' statement to the prospective employer was "knowingly false," "deliberately misleading," or "rendered with a malicious purpose."
Ordinarily, a trial court should not overturn a jury verdict unless "there is no evidence or reasonable inferences to support the opposing position." Stirling v. Sapp, 229 So.2d 850, 852 (Fla.1969). However, in this case, questions on both the statutory and common law privileges were incorrectly submitted to the jury, and the jury did not address § 768.095. In the section of the verdict form dealing with the statute, instead of determining whether the statement was ever, in fact, made to the prospective employer, the jury addressed the undisputed issue of whether the statement related to appellant's "job performance." After deciding that a statement about a "conduct violation" was not related to job performance, the jury did not have to decide whether appellant had met his burden under the statute by clear and convincing evidence.[1]
Thus, we are left without a jury verdict on the controlling issue of this case and address the issue as though the trial court had granted appellees' motion for directed verdict. Viewing the evidence in a light most favorable to appellant, we conclude that the evidence demonstrates that appellees did not make a false statement about appellant. He did, in fact, submit a false time sheet that did not correctly reflect the actual hours that he was on the premises. The effect of the statement could certainly be considered defamatory, and a reasonable jury could have concluded that the statements were deliberately misleading or rendered with a malicious purpose because they implied so much more than an excusable violation. However, the statement was true. Accordingly, appellant's claim for defamation must fail, and we affirm the final judgment on this issue, as well as the denial of the motion for new trial on punitive damages for this issue.

Tortious Interference Claim
Despite the failure of the defamation claim because the statement was technically true, appellant also claimed intentional interference with an advantageous business relationship. "[T]he elements of the tort of intentional interference with an advantageous business relationship are (1) the existence of a business relationship not necessarily evidenced by an enforceable contract, (2) the knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with that relationship by the defendant, and (4) damage to the plaintiff as the result of the breach of the relationship." Linafelt I, 662 So.2d at 989. Here, despite the very technical nature of the "conduct violation," appellant's outstanding work history, and the unemployment compensation referee's finding that the inaccurate time sheet should have been excused, appellees continued to brand appellant in their harshest terms.
Once again, we do not have a jury verdict that follows section 768.095, Florida Statutes. Instead, the jury found that appellees intentionally interfered with appellant without determining whether appellant had demonstrated by clear and convincing evidence that the interfering statements were knowingly false, deliberately misleading, or rendered with malicious purpose. Viewing the evidence in a light most favorable to appellant, we conclude *390 that there was sufficient evidence for a reasonable jury to find that appellees had intentionally interfered with an advantageous business relationship and that appellant had met his burden under the statute. Accordingly, we reverse the judgment in accordance with appellees' motion for directed verdict on this issue. However, because the jury verdict was not rendered under the controlling law and did not address appellant's higher burden of proof, we cannot reinstate the verdict. Therefore, we remand for a new trial on appellant's claim of tortious interference.

Punitive Damages
In the trial court's final order, it concluded that it had improperly dismissed appellant's claim for punitive damages and would grant appellant's motion for new trial on this issue if it had not entered judgment notwithstanding the verdict. We agree, and, because we are reversing the judgment on the tortious interference claim, we also reverse the dismissal of the punitive damages claim as it relates to appellant's claim of tortious interference.

Unemployment Commission Findings
Finally, because this issue will be raised again, we address the trial court's exclusion of evidence related to the unemployment commission hearing. The trial court correctly noted that the referee's findings had little, if any, probative value in demonstrating whether or not the statement about appellant having committed a "conduct violation" was true. Instead, it would tend to focus the trial even more on whether appellant was wrongfully terminated. However, the referee's findings and the hearing itself are highly probative of appellees' state of mind when it made the statements to the prospective employer. The employee who gave the negative job reference was at the hearing and knew that the referee found that appellant's termination was not justified and that his "conduct violation" should have been excused. Knowing this, she not only violated company policy by divulging more information than allowed, but also adamantly responded to the prospective employer's questions with just enough information to place appellant in the most severe category of employee misconduct but not enough to explain the benign nature of the offense. The unemployment hearing further establishes her level of knowledge concerning the incident, and appellant should be able to use this evidence in establishing whether or not the statements were made to deliberately mislead or with a malicious purpose.

Conclusion
We AFFIRM the final judgment on the defamation claim but REVERSE the judgment on the tortious interference claim and the dismissal of punitive damages for tortious interference and REMAND for a new trial.
ERVIN and MINER, JJ., CONCUR; KAHN, J., CONCURS IN RESULT WITH OPINION.
KAHN, J., concurring in result.
I agree that a new trial on liability and damages as to the tortious interference claim is warranted. The jury instructions and the verdict form were hopelessly confusing. I do not join that part of the court's opinion that addresses the unemployment commission findings. If that evidentiary issue comes up on remand, the trial court must not only determine the question of relevancy, it must also weigh the probative value of admitting evidence of the unemployment commission hearing against the prejudicial impact that such evidence will have on appellees. I conclude from my review of the record that the trial court understands the importance of not allowing this action to devolve into a wrongful termination case. The exercise of sound discretion concerning the admission of evidence surrounding appellant's loss of his job with appellees is central to that task.
NOTES
[1] In its final order, the trial court recognized that there was a great deal of confusion at trial concerning the common law and statutory privileges and that the jury's verdict was, in part, a product of this confusion.