[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13738
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cv-00265-RH-GRJ

JARED HALE,

Plaintiff - Appellant,

versus

WILLIAM HUSFELT,
in his official and individual capacities,

Defendant - Appellee,

BAY COUNTY SCHOOL BOARD,

Interested Party - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 10, 2019)

Before MARCUS, ROSENBAUM, and EDMONDSON, Circuit Judges.


PER CURIAM:


Plaintiff Jared Hale appeals the district court's grant of summary judgment in favor of Defendants Bay County School Board ("School Board") and School Board Superintendent William Husfelt, in Plaintiff's employment-related civil action.  Plaintiff asserts claims for tortious interference with a business relationship, in violation of Florida law, and for retaliation based on protected association, in violation of the First Amendment.  No reversible error has been shown; we affirm.

The facts pertinent to this appeal are as follows.  In December 2010, Plaintiff was hired to teach physical education, weightlifting, and history -- and to serve as the head football coach -- at North Bay Haven Charter Academy ("NBH").  NBH is a charter school operated by Bay Haven Charter Academy, Inc. ("BHCA").  BHCA received its charter to operate from the School Board.

In January 2015, NBH Principal Meredith Higgins notified Plaintiff that she was terminating his contract as football coach, explaining that the school wanted to "go in a different direction."  A few days later, Plaintiff emailed Principal Higgins and asked her -- for purposes of his "professional growth" -- about the ways in

2

which he could improve his performance.  In response, Principal Higgins explained that Plaintiff needed additional growth in the areas of organization, leadership, and discipline.

Principal Higgins told Plaintiff that she hoped he would continue teaching history and coaching weightlifting the following school year.  Plaintiff was later informed, however, that his annual teaching contract was not renewed for the 2015-2016 school year.  Assistant Principal Michelle Gainer testified that, when she encouraged Principal Higgins to keep Plaintiff on the teaching staff, Principal Higgins responded, "Don't ask me anymore.  This is coming from above me." Gainer said the person "above" Principal Higgins was Dr. Tim Kitts, BHCA's Chief Educational Officer.

Meanwhile, in early 2015, Plaintiff was hired as an assistant football coach at Bay High School ("BHS"), a public school operated by the School Board. BHS's head football coach, Jimmy Longerbeam, told Plaintiff that Longerbeam also wanted to help secure a teaching position for Plaintiff at BHS.  Longerbeam had no hiring authority and no personal involvement in the application or interview process for classroom teaching positions.  Longerbeam testified, however, that he would encourage his assistant coaches to apply for open teaching positions and would recommend his coaches to BHS's principal, who had final hiring authority.

3

Longerbeam said the football coaches whom he recommended "never" were required to go through a formal interview process: "a lot of times" they interviewed with BHS's principal for just a few minutes.

When Plaintiff applied for an open history teacher position, however, he was interviewed by a three-person interview panel. The committee then ranked Plaintiff sixth out of the nine applicants who were interviewed. Plaintiff was not offered the position.

Plaintiff later filed this civil action against Superintendent Husfelt, in both his official and individual capacities. The parties later stipulated that the School Board should be substituted as the Defendant for Plaintiff's official-capacity claims. Plaintiff asserted against Defendants claims for tortious interference with business relations and for retaliation in violation of the First Amendment.

Briefly stated, Plaintiff contends that Husfelt influenced improperly the adverse employment decisions about Plaintiff in retaliation for conduct engaged in by Plaintiff's parents. By way of background, Plaintiff's parents -- James and Julie Hale -- were employed by the School Board beginning in 2000. The Hales opposed openly Husfelt's 2008 campaign for election to Superintendent and then Husfelt's 2012 campaign for re-election. In 2012, the School Board terminated both James's and Julie's employment. In November 2014, the Hales notified the

4

School Board of their intent to file a lawsuit challenging the termination of their employment. The Hales' lawsuit was filed in March 2016 and has since been resolved.

The district court granted Defendants' motions for summary judgment. In pertinent part, the district court determined that "there is simply no evidence" that Husfelt was involved in (1) the decision to terminate Plaintiff's contract as NBH's football coach, (2) the non-renewal of Plaintiff's NBH teaching contract, and (3) the hiring process to fill BHS's open history teacher position.

We review de novo the district court's grant of summary judgment. Ave. CLO Fund, Ltd. v. Sumitomo Mitsui Banking Corp., 723 F.3d 1287, 1293 (11th Cir. 2013). We view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Id. at 1294. In considering a motion for summary judgment, we "must avoid weighing conflicting evidence or making credibility determinations." Id.

We reject Plaintiff's assertion that the district court "cherry-picked" facts from the record or construed improperly the evidence in favor of Defendants. The district court need not accept Plaintiff's factual allegations that are based only on speculation and conjecture. See id. (in considering a motion for summary judgment, "[a]ll reasonable inferences arising from the undisputed facts should be

5

made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable.").

To succeed on his claims for tortious interference and for First Amendment retaliation, Plaintiff must first demonstrate that Husfelt was involved in the complained-of adverse employment decisions.  See Linafelt v. Beverly Enters.-Florida, Inc., 745 So. 2d 386, 389 (Fla. Dist. Ct. App. 1999) (to prove a claim for tortious interference under Florida law, a plaintiff must demonstrate -- among other things -- "an intentional and unjustified interference with [a business] relationship by the defendant"); Anderson v. Burke Cty., 239 F.3d 1216, 1219 (11th Cir. 2001) (to prove a claim for retaliation under the First Amendment, a plaintiff must show a causal connection between the defendant's adverse employment decision and plaintiff's constitutionally protected conduct).

Plaintiff has produced no direct evidence showing that Husfelt was involved in the adverse employment decisions.  Plaintiff asserts, instead, that Husfelt's involvement in the NBH employment decisions can be inferred based on "inconsistencies" in the record and on the "suspicious timing" of the decisions.

We first reject Plaintiff's assertion that Principal Higgins's comment that Plaintiff needed growth in certain areas -- made in response to Plaintiff's express request for more specific feedback about his performance -- was inconsistent with

6

her initial statement that the school wanted to "go in a different direction" with its football program. Although Plaintiff disagrees with Principal Higgins's assessment that he was disorganized and ineffective, "[w]e are not a 'super-personnel department' assessing the prudence of routine employment decisions," even when the decision is mistaken or based on erroneous facts. See Flowers v. Troup Cty., 803 F.3d 1327, 1338 (11th Cir. 2015). Moreover, nothing evidences that the decision to terminate Plaintiff's coaching contract was unlawful, that Principal Higgins's stated reasons were pretextual, or that the decision was influenced at all by Husfelt.

We also see no "inconsistency" in the record about the people involved in the decision to terminate Plaintiff's coaching contract. Principal Higgins testified that she made the final decision to fire Plaintiff as football coach after discussing the matter with Dr. Kitts, Administrative Assistant Cas Gant, and Athletic Director Debbie Funkhouser.

Principal Higgins denied flatly that Husfelt was involved -- either directly or indirectly -- in the decision to fire Plaintiff. Nothing in the record contradicts that testimony. Principal Higgins's comment that the decision came "from above" was made about the later decision not to renew Plaintiff's teaching contract -- not the decision to terminate Plaintiff's coaching contract. In addition, the "from above"

7

comment cannot from this record be construed reasonably as referring to Husfelt or to the School Board, neither of which had authority over hiring decisions at NBH.

We are also unpersuaded by Plaintiff's assertion about "suspicious timing." Plaintiff contends that Dr. Kitts "pulled some strings" with Husfelt to secure funding for a new gym at NBH. At the ribbon cutting ceremony for the new gym, Plaintiff says he saw Dr. Kitts and Husfelt talking to each other. Later that day, Principal Higgins told Plaintiff that he was being fired as football coach. Even viewed in Plaintiff's favor, this information is not evidence sufficient to support a reasonable inference that Husfelt was involved in the decision to terminate Plaintiff's coaching contract. Plaintiff's assertion that his coaching contract was terminated as a "favor" to Husfelt in exchange for the gym funding -- or was otherwise causally linked to the Hales' notice of intent to sue -- is based entirely on speculation and conjecture.

About the hiring decision at BHS, Plaintiff says Husfelt's involvement can be inferred from circumstantial evidence. On this record, we disagree. First, Plaintiff's contention on appeal that he was the "preferred candidate despite the committee's rankings" is unsupported by the record. That Plaintiff was Longerbeam's preferred candidate says nothing about Plaintiff's qualifications as a history teacher. Also, although Longerbeam said his football coaches were

8

typically hired without a formal interview process, he also acknowledged that he had no personal involvement in the application or interview process for the hiring of classroom teachers.  That Plaintiff believes he was more qualified than the selected candidate is immaterial.  The hiring of employees is a subjective decision, and we will not substitute our judgment for that of the interview committee.  Cf. Flowers, 803 F.3d at 1338.  Plaintiff has failed to present evidence sufficient to allow a reasonable inference that Husfelt was involved in -- or interfered with -- the BHS hiring decision.  Nor has Plaintiff shown that he would have been hired but for the alleged interference.

Viewing the evidence and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has demonstrated no genuine issue of material fact.  Because nothing evidences that Husfelt was involved -- directly or indirectly -- in the complained-of employment decisions, the district court committed no error in granting summary judgment in favor of Defendants.[*]

AFFIRMED.

---

[*] On appeal, Plaintiff also challenges the district court's alternative reasons for granting summary judgment on Plaintiff's (1) First Amendment claim against the School Board arising from the NBH employment decisions and (2) tortious interference claim against Husfelt arising from the BHS hiring decision.  Because we agree with the district court's primary reason for granting summary judgment -- the lack of evidence of Husfelt's involvement in the employment decisions -- we need not address these arguments on appeal.

9